IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number:
Judge:

MATTHIAS ASKEW, individually, and on
behalf of his minor child NA; and
PATRICK MANNING and SHAQUOIA
MANNING, individually, and on behalf their minor
children PZM and PGM.

                         Plaintiffs,
    v.

CITY OF PLANTATION, a municipality,
W. HOWARD HARRISON, individually.
JEFFREY BEAUREGARD, individually, and
WILLIAM LATHAM, individually,

                         Defendants.
_____/

## **COMPLAINT**

Plaintiffs, MATTHIAS ASKEW, individually and on behalf of Plaintiff NA, a minor

child, and PATRICK and SHAQUOIA MANNING, both individually and on behalf of the

minor children, PZM and PGM ("Manning Children"), sue Defendants, the CITY OF

PLANTATION, W. HOWARD HARRISON, JEFFREY BEAUREGARD, and WILLIAM

LATHAM for damages, jointly and severally, demand trial by jury, and allege:

### **Jurisdiction**

1.    This action is brought pursuant to 42 U.S.C. §§1983, 1988, the Fourth, Fifth, and

Fourteenth Amendments to the United State Constitution, and the tort laws of Florida.

Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, the constitutional

provisions mentioned above, and under the tort law of Florida. Supplemental jurisdiction,

and joinder of parties for additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the *same case or controversy*. Plaintiffs assert multiple state tort law claims.

2.     In connection with the acts, practices and violations alleged below, the Defendants the CITY OF PLANTATION, W. HOWARD HARRISON, JEFFREY BEAUREGARD and WILLIAM LATHAM have each, either directly or indirectly violated clearly established constitutional rights, and/or statutory and common law duties owed to each Plaintiff.

3.     All conditions precedent under Florida law for the filing of state law claims have been satisfied.

### Parties

4.     The Plaintiff MATTHIAS ASKEW, at all times material hereto, has been a resident of Broward County, Florida, over the age of eighteen years and otherwise able to sue in his own capacity.

5.     MATTHIAS ASKEW is the natural parent and guardian of the minor child N A, able and proper to sue on the child's behalf.   At all times herein, claims brought by NA are made by ASKEW on her behalf.

6.     The Plaintiff PATRICK MANNING, at all times material hereto, has been a resident of Broward County, Florida, over the age of eighteen years of age, and otherwise able to sue in her own capacity.

7.     The Plaintiff SHAQUOIA MANNING at all times material hereto has been a resident of Broward County, Florida, over the age of eighteen years of age, and otherwise able to sue in her own capacity.

8.      PATRICK and SHAQUOIA MANNING are the natural parents and guardians of the minor children PZM, PGM and PKM, able and proper to sue on their behalf.

9.      Defendant CITY OF PLANTATION is a municipal entity incorporated in the State of Florida whose boundaries are located wholly within Broward County. The Plantation Police Department is a subdivision of the CITY OF PLANTATION created and designated to provide law enforcement services subject the all Federal and State statutes and constitutional provisions.

10.     At all times material hereto the actions, policies, procedures, customs and/or practices of the Plantation Police Department are one and the same as those of the CITY OF PLANTATION.

11.     Defendant W. HOWARD HARRISON ("HARRISON") is the Chief of Police of the CITY OF PLANTATION Police Department. Defendant HARRISON is sued herein in his individual capacity as set forth and delineated below.

12.     Defendant HARRISON is responsible for the officers in his employ, and ensuring that the officers, employees, servants and agents of the Plantation Police Department obey the laws of the State of Florida and the United States. Defendant HARRISON is also the final policymaker responsible for all operational and investigative policies, training and supervision, practices, customs, and orders of the Plantation Police Department.

13.     In addition to liability on his own behalf for the actions and omissions complained of herein, the acts and omissions of Defendant HARRISON are synonymous with those of the Defendant CITY OF PLANTATION ("CITY").

14.     Defendant JEFFREY BEAUREGARD ("BEAUREGARD") is a duly appointed law enforcement officer of the Plantation Police Department, at all times material hereto acting

under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the CITY OF PLANTATION, HARRISON, and/or the State of Florida. Defendant BEAUREGARD is being sued in his individual capacity.

15.    Defendant WILLIAM LATHAM ("LATHAM") is a duly appointed law enforcement officer of the Plantation Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the CITY OF PLANTATION, HARRISON, and/or the State of Florida. Defendant LOPEZ is being sued in his individual capacity.

## General Allegations of Fact

16.    Defendants CITY OF PLANTATION (the "CITY"), HARRISON, BEAUREGARD and LATHAM violated Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution as well as the laws of Florida. It is further alleged that these violations were committed as a result of malice, recklessness, deliberate indifference, and/or plain incompetence of Defendants BEAUREGARD, LATHAM and/or HARRISON; and/or pursuant to the policies, practices and/or customs of Defendant CITY.

17.    Defendants BEAUREGARD, LATHAM and/or HARRISON knew, or should have known, that the nature of their actions were illegal, but ignored their legal duties either recklessly, intentionally and/or by deliberate indifference.

### *Facts specific to Plaintiffs Askew and NA*

18.    On April 18, 2014 BEAUREGARD while on patrol effected a traffic stop on a vehicle driven by ASKEW.  BEAUREGARD later asserted that the basis for stopping the vehicle was because Mr. ASKEW was tailgating the vehicle in front. In fact, the flow of

4

traffic was congested, and slowing at the time to a stop at a traffic signal. No reasonable person would have concluded that ASKEW had committed any traffic violation. This alleged infraction, along with several others for which ASKEW was later written traffic citation by BEAUREGARD, was pre-textual. In fact, BEAUREGARD'S actions were guided by anger, petty animosity, hostility, and/or racial bias toward ASKEW after ASKEW "looked" at him in a manner BEAUREGARD felt was disrespectful and/or non-submissive.

19.    Defendant BEAUREGARD'S actions in stopping ASKEW were a result or form of what can colloquially be described as "road rage," not intended to fulfill his duties as a law enforcement officer in good faith, but to express his own personal anger.

20.    At all times material hereto the police vehicle driven by BEAUREGARD was equipped with a digital video recording system, which includes both visual and audio capabilities. The digital camera in the system is connected to a remote microphone worn by the officer, in this case BEAURGARD. In accord with CITY "Police In-car Digital Video Cameras" Standard Operating Procedure ("SOP"), at the time he exited his vehicle to approach Mr. ASKEW'S car, BEAUREGARD was required to activate both the digital camera and microphone.

21.    However, to conceal the malignant nature of his communications toward Mr. ASKEW, BEAUREGARD purposely and intentionally failed to activate the microphone worn on his person. At the time, the audio function of the recording system was operable, and BEAUREGARD'S failure to record the content of his speech toward ASKEW can only be interpreted as an attempt to act with impunity and avoid detection and later scrutiny.

22.     Upon making direct contact with ASKEW at the driver-side window, BEAUREGARD acted in a manner which reasonably caused ASKEW to fear for his own safety, and that of his seven-year old daughter NA seated in the front passenger seat.

23.     To avoid any escalation of hostility and potential physical harm from BEAUREGARD, ASKEW began calling the 9-1-1 emergency line seeking assistance of a Plantation Police supervisor, or other law enforcement.

24.     At no time material hereto did ASKEW or NA do or say anything that might have reasonably been interpreted as a threat to the safety of BEAUREGARD or any other person. Plaintiff ASKEW remained in his vehicle. When a CITY police department supervisor, Sgt. David Khaleel ("Khaleel") did arrive ASKEW requested permission to exit his vehicle to discuss the matter, which he did.

25.     At the time ASKEW met with Khaleel outside his car, multiple other Plantation police officers had arrived and were present. One of those officers was Defendant LATHAM.

26.     Sergeant Khaleel was dismissive of ASKEW'S protests regarding BEAUREGARD'S abnormal and improper behavior and insisted that his (ASKEW'S) only redress was to issue a complaint with the police department itself. Khaleel also advised ASKEW that any such complaint, regarding the conduct of BEAUREGARD, would be fairly and impartially reviewed by the CITY.  At the time Khaleel made this statement he knew, or should have known, that it was false, as Defendants CITY and HARRISON maintained a practice and/or custom of systematically approving any actions of his officers, including the potential use of force, without meaningful review or scrutiny.

27.     Khaleel's failure to competently identify and redress the circumstances, and avoid what ultimately became a violent incident, was the result of a culture and environment created by HARRISON and the CITY that was deliberately indifferent to the rights of citizens and/or a lack of supervision of the officers in their employ.

28.     During the conversation Plaintiff ASKEW voluntarily advised Khaleel that he was licensed to possess a firearm, and that there was a firearm inside the car, secured, and encased on the rear floorboard. Satisfied that neither Mr. ASKEW, nor the secured firearm presented a threat of harm, Khaleel left.

29.     ASKEW returned to his car to await receipt of the citation and to leave on his way.  However, with the supervisor gone BEAUREGARD once again became aggressive and threatening. These actions went either unnoticed by the other officers still present, or were purposely ignored.

30.     Defendant BEAUREGARD then instructed ASKEW to leave, and walked away. Rather than doing so ASKEW insisted upon contacting a responsible member of the Plantation Police Department in an attempt to reach some supervisor able to address BEAUREGARD'S outrageous behavior.

31.     At all times material hereto ASKEW was within his lawful right to remain stationary and refuse BEAUREGARD'S command to leave the area so that the officer's threats and aggressive behavior toward him could be addressed immediately as they were occurring.

32.     BEAUREGARD'S instruction to ASKEW to immediately leave the area was made with the intent to avoid meaningful investigation of his own misconduct.

7

33.     BEAUREGARD then determined to arrest ASKEW. The decision to make the arrest was not based on probable cause or the lawful execution of his discretionary duties, but instead as retaliation against ASKEW for choosing to bring scrutiny to his actions and prevent lawful redress.

34.     Intent upon escalating the danger level, and/or intending to provoke a reaction from ASKEW that would seemingly justify the use of force, BEAUREGARD drew his Taser and returned to ASKEW'S car.

35.     At no time did BEAUREGARD have probable cause, arguable probable cause, or other legal justification to arrest ASKEW.  BEAUREGARD'S actions were the result of plain incompetence in that he was motivated by anger, or other emotion, and not the proper discretionary execution of his lawful duties. ASKEW'S attempts to seek assistance by repeatedly calling the 9-1-1 line were a reasonable and justified response to the aberrant behavior exhibited by BEAUREGARD, and the failure of any other officers present to intervene.

36.     In an attempt to effect the arrest BEAUREGARD opened the driver's door, and attempted to pull ASKEW from the driver's seat. At the time he did so BEAUREGARD unreasonably endangered the safety of ASKEW, NA, himself, and the other officers present because the car gear-shift was in the drive position. BEAURGARD then stepped back and pointed the Taser directly at ASKEW and NA. Simultaneously, LATHAM, standing outside the front passenger door, withdrew his Taser devise and pointed it into the car at NA and ASKEW.

37.     To protect his seven-year old daughter from imminent electrocution ASKEW turned to shield her with his body.

38.     At no time did ASKEW or NA make any movement or action that might have reasonably been interpreted by BEAUREGARD, LATHAM, or any other officers as an attempt to obtain the firearm located under the front passenger seat and secured in the manufacturer's case. No reasonable person, under the circumstances, would have believed that either ASKEW or NA posed a threat of danger to BEAUREGARD or LATHAM, or anyone else by taking possession of the firearm.

39.     Defendants BEAUREGARD and LATHAM then coldly and cruelly deployed their Tasers for multiple cycles, striking ASKEW and NA with the weapon probes and/or the electrified lines connecting the weapon to the probes. Both ASKEW and NA were electrocuted by the probes, tag lines and/or the electrified detritus expelled by the Tasers when fired.

40.     Initially paralyzed by the electrical shock, and unable to place the gear-shift in park, ASKEW then began an attempt to stop BEAREGUARD from further deploying his Taser at himself and his child.  ASKEW fell out of the car while grabbing at the electrified lines leading back to BEAUREGARD'S weapon. As he did so, the car, still in drive-gear, began to proceed forward with ASKEW prone on the ground outside and NA inside.

41.     At all times material hereto any resistance offered by ASKEW to the arrest was justified, as the resistance was passive and non-violent, and the arrest was illegal.

42.     ASKEW was arrested and charged by BEAUREGARD and the CITY with the misdemeanor offenses of Resisting an Officer Without Violence and Improper Use of the Emergency 911 System. ASKEW was also charged with four traffic-related infractions. The arrest and imprisonment was false, and caused by plain incompetence for which

BEAUREGARD is not entitled to any degree of immunity, as it violated a clearly established constitutional right.

43.     On December 4, 2014, after a review of the evidence and testimony presented by the CITY and its officers, including BEAURGARD and LATHAM, the prosecuting authority of Broward County dismissed all the charges by way of Nolle Prosse.

44.     Plaintiff ASKEW is a retired professional and college football player, having played and received public recognition at Michigan State University, and in the National Football League. At the time he was arrested by the CITY and BEAUREGARD he possessed unique income producing and benevolent opportunities on behalf of himself and various charitable organizations. The fruition and success of these opportunities is largely dependent upon Mr. ASKEW'S general reputation and public image.

45.     At the time of his arrest Mr. ASKEW was engaged in negotiations to purchase a franchise location from a regionally established restaurant food chain company. As a direct and proximate result of ASKEW'S arrest, those negotiations were terminated by the franchisor.

46.     The Defendants' actions have caused damage to ASKEW'S reputation, which is irreparable and which will affect his ability to produce income, and which will affect his enjoyment of life, now and in the future.

47.     As a direct and proximate result of BEAUREGARD'S and/or LATHAM'S actions ASKEW and NA suffered both physical and mental injury and anguish.

### *Facts specific to Plaintiffs Patrick and Shequoia Manning, PZM and PGM*

48.     On April 28, 2015 Defendant BEAUREGARD initiated a traffic stop in the City of Lauderhill. In doing so BEAUREGARD activated his emergency overhead lights causing the car he intended to stop to pull over along side of the roadway. BEAUREGARD then pulled his vehicle directly behind the stopped vehicle.

49.     As he opened his car door and exited his vehicle BEAUREGARD directed the vehicle traffic travelling on the roadway behind his vehicle to stop to allow his safe egress. This section of roadway in Lauderhill is a single northbound lane, originating a short distance from a main Broward County traffic artery (Sunrise Boulevard) behind it. BEAUREGARD'S command to stop traffic caused an immediate backup of vehicles back to the intersection and into Sunrise Boulevard.

50.     After BEAUREGARD safely exited his vehicle he began to proceed out of the roadway toward the vehicle he shad stopped. Thereafter, at least one vehicle was then able to safely navigate past BEAUREGARD and proceed on its way. The Plaintiffs' car (the Manning family) then became the next vehicle to pass.

51.     Also, believing that it was then safe to pass BEAUREGARD, who had now stepped out of the roadway, the Manning Family vehicle began to pass by.

52.     At no time was BEAUREGARD, or any other person or vehicle in any danger as the Mannings passed. The decision by PATRICK MANNING to pass by was reasonable, and lawful, in that BEAUREGARD appeared to discontinue the command for traffic to remain stopped, and the stoppage of traffic created a traffic hazard, endangering the safety of multiple vehicles and the persons in them.

53.     For reason unknown to the Plaintiffs, BEAUREGARD rushed back into the roadway toward their car and violently struck the right side with his fists. BEAUREGARD'S display of aggression created panic and distress to the Plaintiffs who reasonably believed they were in physical danger.

54.     BEAUREGARD then abandoned his present traffic stop and took chase after the Mannings in his police vehicle. He initiated a traffic stop a short distance away at an intersection on the same roadway.

55.     Defendant BEAUREGARD'S actions in attacking the vehicle, and then stopping the Mannings were a result or form of what can colloquially be described as "road rage," not intended to fulfill his duties as a law enforcement officer in good faith, but to express his own personal anger.

56.     Additionally, or the alternative, BEAUREGARD'S actions and reactions were motivated by bias and racial prejudice.  The Manning family is African-American, and this was plainly visible to BEAUREGARD at the time.

57.     At all times material hereto the police vehicle driven by BEAUREGARD was equipped with a digital video recording system, which includes both visual and audio capabilities. The digital camera in the system is connected to a remote microphone worn by BEAURGARD. In accord with CITY "Police In-car Digital Video Cameras" Standard Operating Procedure ("SOP"), at the time he exited his vehicle to approach the Plaintiff's vehicle, BEAUREGARD was required to activate both the digital camera and microphone.

58.     However, to conceal the malignant nature of his communications toward Plaintiffs, BEAUREGARD purposely and intentionally failed to activate the microphone worn on his person.  At the time, the audio function of the recording system was operable,

and BEAUREGARD'S failure to record the content of his speech toward the Plaintiffs can only be interpreted as an attempt to avoid detection and later scrutiny.

59.     BEAUREGARD immediately approached the driver's door, opened it and advised Plaintiff PATRICK MANNING that he was under arrest for attempted murder of a law enforcement officer.  At the time he made this statement BEAUREGARD knew that he had no probable cause to arrest PATRICK MANNING for that offense, or any other.

60.     BEAUREGARD'S intent to arrest PATRICK MANNING was not based on the lawful execution of his discretionary duties as a law enforcement officer. Based on information and belief stemming from the observations by Plaintiff PATRICK and SHAQUOIA MANNING, BEAUREGARD'S violent reactions were caused solely by a threat to his personal ego and a perception of personal authority greater than that reposed in him by the color of law.

61.     Out of fear and confusion, as well as the safety of his family, PATRICK MANNING refused to exit the driver's seat.  Such refusal was justified, as any arrest, or attempt to arrest, by BEAUREGARD was illegal.

62.     Failing to consider the safety of PATRICK MANNING, or the other members of Manning family, including three small children, or other vehicles and persons in the roadway, or himself, BEAUREGARD reached into the vehicle and pulled PATRICK out of the driver's seat slamming him down into the pavement. In fact, the car was still in the drive-gear, and began to move forward into traffic without a driver, exacerbating the panic and fear of SEQUOIA MANNING and her children stuck inside.

63.     BEAUREGARD then arrested PATRICK MANNING charging him with Aggravated Assault on a Law Enforcement Officer and Resisting Arrest Without Violence.

In doing so, BEAUREGARD acted without probable cause, arguable probable cause, or any other legal justification. The arrest and subsequent incarceration of PATRICK was false, and caused by plain incompetence for which BEAUREGARD is not entitled to any degree of immunity, as it violated a clearly established constitutional right.

64.     In an effort to conceal the illegal and excessive nature of his actions Defendant BEAUREGARD did falsify information in official documents, and/or did fail to accurately report his actions.

65.     Despite the obvious and/or easily discernable illegality of BEAUREGARD'S actions Defendants HARRISON and the CITY approved and endorsed the arrest and use of force against PATRICK MANNING, as well as the reckless and negligent endangerment of the remaining MANNING plaintiffs.

66.     However, on July 24, 2015, after a review of the evidence and testimony presented by the CITY and its officers, and despite a specific request to file the charges by BEAURGARD himself, the prosecuting authority of Broward County declined prosecution.

### *Allegations specific to Defendants CITY and HARRISON*

67.     At all times material hereto the CITY and HARRISON were on notice of a pattern and practice of widespread use of excessive force by Plantation Police Department officers, against the citizenry. While the extant written policies regarding the use of force by Plantation police officers are constitutional on their face, the policies themselves are deficient in their content and detail, and/or in the manner of implementation by the CITY and HARRISON.

14

68.     The CITY and HARRISON have been, and continue to be, deliberately indifferent to the promulgation and/or implementation of policies sufficient to protect the rights of the citizenry they are obligated to serve, to effectively avoid illegal and unfounded arrests and the excessive use of force by Plantation officers, and/or these defendants have been, and continue to be, deliberately indifferent to adequate training and/or supervision, and/or discipline of said officers to prevent such abuses.

69.     The Defendant HARRISON'S systematic and consistent approval and ratification of excessive use of force in relation to the tasks necessarily performed by Plantation police officers constitutes "city policy," which was the cause and/or moving force of the injury to the Plaintiffs ASKEW, NA and the MANNINGS. The causal connection is established by a history of widespread abuse of which HARRISON knew, or should have known, since at least the year 2010.   Abuse of citizens was obvious, flagrant, rampant and of continued duration.

69.     In fact, HARRISON'S personal review of uses of force was meaningless, perfunctory and/or mere formality, in certain instances approving and ratifying uses of force that expressly contradict his own written policies and orders.

70.     Despite having such notice the CITY and/or HARRISON failed to take remedial action by way of supervision, training, and/or discipline of any of the CITY'S officers who used excessive force. No investigation into any instance of use of force by a CITY police officer from 2010 until the date of February 22, 2015 resulted in any meaningful or necessary remedial action, retraining and/or discipline, including instances of excessive use of force.

71.     As such, the CITY'S officers, including Defendants BEAUREGARD and LATHAM are comfortable in the assurance that their use of excessive force will not result in any discipline or negative consequences affecting their employment.

72.     The CITY'S and HARRISON'S deliberate indifference, and allowance of deficient city policy, practice and/or custom, created a foreseeable assurance and likelihood that the rights of citizens, including those of the Plaintiffs herein would become the victims of constitutional violations by Plantation officers.

73.     The injury suffered by Plaintiffs, each and all, were the result of this deliberate indifference in that the failure of the CITY and HARRISON to take meaningful and appropriate action by retraining, discipline, supervision, and/or any other remedial action, in instances where CITY officers used excessive force, allowed Defendants BEAUREGARD and LATHAM to believe they could violate the Plaintiffs rights, as set forth herein, with impunity. As such, the deliberate indifference to the rights of citizens was the moving force that resulted in the injury to the Plaintiffs.

74.     Defendants CITY and HARRISON knew, or should have known, that Plantation Police officers were engaged in a pattern of excessive use of force and related violations of citizens rights, but instead ignored these abuses, and did systematically ratify any use of force without proper review, scrutiny and/or supervision. Such instances of excessive use of force, all of which were personally known to Defendant HARRISON but nonetheless sanctions and approved, include, but are not limited to:

        a.      The unjustified and excessive use of force against Ms. Barbara Henry on February 8, 2010.

        b.      The unjustified and excessive use of force against Devonn Singleton on September, 2010.

c.      The unjustified and excessive use of force against Emunah Susson on April 5, 2010.

d.      The unjustified and excessive use of force against Alphonso T. Smith on November 11, 2010.

e.      The unjustified and excessive use of force against Mr. Alonzo Polk on August 5, 2011.

f.      The unjustified and excessive use of force against Jerome Gelin on August 10, 2011.

g.      The unjustified and excessive use of force against James Williams on November 6, 2011.

h.      The unjustified and excessive use of force against Giordoni Dabel on January 6, 2012.

i.      The unjustified and excessive use of force against Richard Gallego on August 8, 2012.

j.      The unjustified and excessive use of force against Francis Hogan on September 5, 2012.

k.      The unjustified and excessive use of force against Karl Samuel Jean-Francois on February 1, 2013.


l.      The unjustified and excessive use of force against Reynaldo Witter on February 1, 2013.

m.      The unjustified and excessive use of force against Agnouie Agbessi on June 7, 2013.

n.      The unjustified and excessive use of force against Jerome Campbell on May 5, 2013.

o.      The unjustified and excessive use of force against Nicholas Perkins on February 5, 2013.

p.      The unjustified and excessive use of force against Micah Hudson on March 2, 2013.

q.      The unjustified and excessive use of force against Mark Tindall on August 2, 2014.

r.      The unjustified and excessive use of force against Isaac Cyriaque on June 25, 2014.

s.      The unjustified and excessive use of force against Nicholas Mittoo on February 22, 2015.

**Count I**
**Assault and Battery Against Matthias Askew**
**State Tort Claim**
**(Defendants BEAUREGARD and LATHAM)**

75.      Plaintiffs hereby-incorporate paragraphs 1- 47 and 71 above as if specifically set forth herein.

76.      On April 18, 2014 Defendants BEAUREGARD and LATHAM intentionally and unlawfully struck ASKEW with their conductive electronic Taser weapons against his will.

77.      At the time, BEAUREGARD was attempting to effect an illegal arrest of ASKEW who had lawfully and properly refused to obey BEAUREGARD'S order, given solely for the purpose of frustrating ASKEW'S ability to protect himself from the officer's threatening and aggressive actions.

78.      BEAUREGARD actions, leading to the discharge of his weapon were motivated by anger, hatred, spite, ill-will and/or racial prejudice, and not the lawful exercise of his discretionary duties as a law enforcement officer. In short, BEAUREGARD fired his weapon, hitting ASKEW, because he wanted to.

79.      To the extent Defendant LATHAM fired his weapon in furtherance of and in conjunction with the actions of BEAURGARD his discharge of the weapon was also without any legal justification. Any claim by LATHAM that he fired to protect the safety of himself, BEAUREGARD or any other officer, is false.

80.     As a direct and proximate result of the Defendant BEAUREGARD'S and LATHAM'S actions MATTHIAS ASKEW suffered physical injury, embarrassment, indignity, humiliation, emotional injury, and/or loss of enjoyment of life.

        **WHEREFORE**, the Plaintiff MATTHIAS ASKEW requests this Court enter judgment against Defendants BEAUREGARD and LATHAM individually, and award the Plaintiff compensatory and punitive damages, as well as all other further relief this Court deems just and proper.  Plaintiff MATTHIAS ASKEW demands trial by jury for all issues so triable by right.

### Count II
### Assault and/or Battery Against NA
### State Tort Claim
### (Defendants BEAUREGARD and LATHAM)

81.     Plaintiffs hereby-incorporate paragraphs 1- 47 and 71 above as if specifically set forth herein.

82.     On April 18, 2014 Defendants BEAUREGARD and LATHAM did intentionally and unlawfully commit assault and/or battery upon Plaintiff NA, a seven year-old child by intentionally aiming a conductive electronic Taser weapon at her, creating a well founded fear of imminent harm; and/or by electrocuting her by the discharge of the weapons.

83.     To the extent that the actions by these Defendants were intended toward Plaintiff ASKEW, and NA was placed in fear and/or struck unintentionally, BEAUREGARD and LATHAM remain liable as the intent toward ASKEW was transferred to NA.

84.     As a direct and proximate result of the Defendant BEAUREGARD'S and LATHAM'S actions herein NA suffered both short term and long term physical injury, extreme emotional injury, and/or loss of enjoyment of life.

**WHEREFORE**, the MATTHIAS ASKEW on behalf of Plaintiff NA requests this Court enter judgment against Defendants BEAUREGARD and LATHAM individually, and award the Plaintiff compensatory and punitive damages, as well as all other further relief this Court deems just and proper.  Plaintiff NA demands trial by jury for all issues so triable by right.

**Count III**
**Excessive Use Of Force Against MATTHIAS ASKEW**
**42 U.S.C. §1983 Claim**
**(Defendants BEAUREGARD and LATHAM)**

85.      Plaintiffs hereby incorporate paragraphs 1-47 and 71 above, as if specifically set forth herein.

86.      At no time during the events giving rise to this action did ASKEW commit any act, motion or gesture to oppose any member of the Plantation Police Department, including Defendants BEAUREGARD or LATHAM or any other person, that might reasonably have been interpreted or perceived as a threat to their safety, health or wellbeing. Any claim by these Defendants that the use of force was necessary to ensure their safety, or that of anyone else, is unreasonable and unsupported by the factual circumstances with which they were presented. While it was known that ASKEW did have a firearm in the car, the gun was securely encased, not within his ready reach, and inaccessible at the time the officers discharged their weapons. Moreover, ASKEWS movements were distinctly and clearly not in the direction of the back area of the car but sideways toward his daughter. No reasonable person would have believed that ASKEW was making any motion consistent with obtaining the firearm.

87.      The force used by the Defendants BEAUREGARD and LATHAM against ASKEW was excessive, unjustified and/or unnecessary.

88.     In an effort to conceal the illegal and violative nature of their actions, Defendants BEAUREGARD and LATHAM did falsify official reports, and/or did fail to report or concealed the facts and circumstances of their use of force.

89.     As a direct and proximate result of the Defendants BEAUREGARD'S and LATHAM'S violation of Plaintiff ASKEW'S clearly established 4th Amendment right to be free of unreasonable search or seizure, he suffered physical and emotional injury, reputable damage and/or loss of enjoyment of life.

    **WHEREFORE**, the Plaintiff ASKEW requests this Court enter judgment against Defendants BEAUREGARD and LATHAM individually, and award the Plaintiffs compensatory and punitive damages, as well as attorney fees pursuant to 42 U.S.C §1988, and all other further relief this Court deems just and proper.  Plaintiff demands trial by jury for all issues so triable by right.

### Count IV
### False Arrest/Imprisonment Against MATTHIAS ASKEW
### State Tort Claim
### (Defendant BEAUREGARD)

90.     Plaintiffs hereby incorporate paragraphs 1-47 and 71 above, as if specifically set forth herein.

91.     On or about April 18, 2014 the Defendant BEAURGARD did unlawfully detain and/or seize ASKEW by unlawfully restraining his movement and freedom while acting under the color of law.

92.     At no time did there exist probable cause, or arguable probable cause, to support the arrest. No reasonable law enforcement officer presented with the same set of circumstances would have believed that probable cause existed to arrest ASKEW.

93.     The unlawful detention of ASKEW was the result of the plain incompetence of Defendant BEAUREGARD while acting within the course and scope of his employment, and pursuant to the discretionary authority vested in him by the CITY and HARRISON.

94.     BEAUREGARD'S actions were incompetent because they were motivated by base personal emotion and not the lawful exercise of his duties.

95.     As a direct and proximate result of the illegal arrest of ASKEW he was falsely imprisoned in the Broward County Jail and forced to go bail. As a further direct and proximate result ASKEW was criminally prosecuted and forced to retain the services of counsel.

96.     In an effort to conceal the illegal and violative nature of his actions, Defendant BEAUREGARD did falsify official reports, and/or did fail to report or concealed the facts and circumstances of the arrest.

97.     As a direct and proximate result of the Defendant BEAUREGARD'S   tortious actions ASKEW suffered incarceration, physical injury, embarrassment, indignity, humiliation, emotional injury, and/or loss of enjoyment of life.

        **WHEREFORE**, the Plaintiff MATTHIAS ASKEW requests this Court enter judgment against Defendant BEAUREGARD individually, and award the Plaintiff compensatory and punitive damages, as well as all other further relief this Court deems just and proper.  Plaintiff ASKEW demands trial by jury for all issues so triable by right.


<u>**Count V**</u>
<u>**False Arrest/Imprisonment Against MATTHIAS ASKEW**</u>
<u>**42 U.S.C. §1983 Claim**</u>
**(Defendant BEAUREGARD)**

98.     Plaintiffs hereby incorporate paragraphs 1-47 and 71 above, as if specifically set forth herein.

99.     The initial traffic stop conducted by BEAUREGARD upon ASKEW was unlawful as it was a pretext, motivated by personal animosity, malice and/or racial prejudice, and not the lawful exercise of law enforcement authority or duty.

100.    BEAUREGARD'S subsequent orders to ASKEW during the pre-textual stop, including but not limited to the command to refrain from call the 9-1-1 emergency line, and the command to leave the area, were not made in the course of, or in furtherance of, the lawful exercise of his discretionary duties, but were in fact motivated by personal animosity or similar emotion, and/or to prevent ASKEW from effectively issuing complaint for an abuse and/or usurpation of police authority.

101.    Consequently, the orders or directives issued by BEAUREGARD were not lawful, and could not form the basis of probable cause to arrest.

102.    In an effort to conceal the illegal and violative nature of his actions, BEAUREGARD did intentionally fail to activate the audio operation of his Dash Cam recorder, falsify official reports, and/or did fail to report or concealed the facts and circumstances of his action.

103.    As a direct and proximate result of the Defendant BEAUREGARD'S violation of Plaintiff ASKEW'S clearly established 4th Amendment rights to be free from unlawful seizure, he suffered physical and emotional injury, reputable damage and/or loss of enjoyment of life.

        **WHEREFORE**, the Plaintiff ASKEW requests this Court enter judgment against Defendant BEAUREGARD individually, and award the him compensatory and punitive

damages, as well as attorney fees pursuant to 42 U.S.C §1988, and all other further relief this Court deems just and proper.  Plaintiff demands trial by jury for all issues so triable by right.

**Count VI**
**Infliction of Emotional Distress Against NA**
**State Tort Claim**
**(Defendants BEAUREGARD and LATHAM)**

104.    Plaintiffs hereby incorporate paragraphs 1-47 and 71 above, as if specifically set forth herein.

105.    On or about April 18, 2014 NA suffered the physical impact of the probes, contact lines, and/or electrified detritus, expelled by a Taser weapon fired by Defendant BEAURGARD and/or Defendant LATHAM.

106.    The firing of either and/or both weapons was the result of the intentional and/or reckless behavior of these defendants, who fired at or in her direction, at close range.

106.    These defendants, each, owed a duty to NA to protect her from harm and/or use of force against her person that was not justifiable.

107.    The firing of the Taser weapons intentionally by BEAUREGARD and/or LATHAM at, or in the direction of an unprotected seven year-old child, at close range, where there was no threat to their own safety, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

108.    In the alternative, the actions of these defendants in firing their weapons at, or in the direction of NA were negligent, incompetent, and breached the duty of care owed, causing physical and/or emotional injury and distress.

109.     In the alternative, to the extent that there existed no physical impact as a result of the discharge of one or both Taser devises discharged by BEAUREGARD and/or LATHAM, each of these defendants breached a duty owed to NA that was statutory and constitutional and/or the resulting emotional harm was so foreseeable that a cause of action exists without impact.

110.     As a direct and proximate result of these defendants intentional and/or negligent infliction of emotional distress, NA suffered severe psychological trauma and emotional harm.

   **WHEREFORE**, the Plaintiff ASKEW, on behalf of NA requests this Court enter judgment against Defendants BEAUREGARD and LATHAM individually, and award the compensatory and punitive damages, as well all other further relief this Court deems just and proper.  Plaintiff demands trial by jury for all issues so triable by right.


### Count VII
### False Arrest/Imprisonment Against PATRICK MANNING
### State Tort Claim
### (Defendant BEAUREGARD)

111.     Plaintiffs hereby incorporate paragraphs 1-17, 48-66 and 71 above, as if specifically set forth herein.

112.     The decision to arrest PATRICK MANNING was not based on a determination of probable cause to believe he had committed any crime, but was informed only by BEAUREGARD'S subjective impression of personal insult. Moreover, no reasonable law enforcement officer presented with the same set of circumstances would have believed that probable cause existed to arrest PATRICK MANNING. Consequently, Defendant

BEAURGARD did unlawfully detain and/or seize MANNING by unlawfully restraining his movement and freedom while acting under the color of law.

113.    Having initially brought the flow of traffic to a halt BEAUREGARD proceeded out of the roadway discontinuing any reasonably apparent direction to the waiting vehicles to remain stationary.

114.    In turn, PATRICK MANNING began to drive around both the police vehicle and the detained vehicle. As he did, BEAUREGARD became enraged, stepped back into the roadway and struck the MANNING'S car.

115.    At no time did PATRICK MANNNG disobey or obstruct BEAUREGARD in the execution of any lawful duty.

116.    At no time did PATRICK MANNING direct the vehicle toward BEAUREGARD, or operate the vehicle in any manner that became threatening to his safety.

117.    At no time was BEAUREGARD in danger of being struck by the MANNING'S vehicle.

118.    The unlawful detention of ASKEW was the result of the plain incompetence of Defendant BEAUREGARD while acting within the course and scope of his employment, and pursuant to the discretionary authority vested in him by the CITY and HARRISON.

119.    As a direct and proximate result of the Defendant BEAUREGARD'S illegal detention and imprisonment of Plaintiff PATRICK MANNING he suffered physical and emotional injury, reputable damage and/or loss of enjoyment of life.

**WHEREFORE**, the Plaintiff PATRICK MANNING requests this Court enter judgment against Defendant BEAUREGARD individually, and award the Plaintiff compensatory and punitive damages, as well as all other further relief this Court deems just

and proper.  Plaintiff PATRICK MANNING demands trial by jury for all issues so triable by right.

### Count VIII
### False Arrest/Imprisonment Against PATRICK MANNING
### 42 U.S.C. §1983 Claim
### (Defendant BEAUREGARD)

120.     Plaintiffs hereby incorporate paragraphs 1-17, 48-66, 71 and 112 above, as if specifically set forth herein.

121.     The arrest of PATRICK MANNING was in violation of his clearly established 4th Amendment right to be free of unlawful search and seizure.

122.     No reasonable person would have believed there was probable cause or arguable probable cause for the arrest.

123.     As a direct and proximate result of the Defendant BEAUREGARD'S illegal detention and imprisonment of Plaintiff PATRICK MANNING he suffered physical and emotional injury, reputable damage and/or loss of enjoyment of life.

        **WHEREFORE**, the Plaintiff PATRICK MANNING requests this Court enter judgment against Defendant BEAUREGARD individually, and award the Plaintiff compensatory and punitive damages, attorney's fees and cost, as well as all other further relief this Court deems just and proper.  Plaintiff PATRICK MANNING demands trial by jury for all issues so triable by right.

### Count IX
### Assault and Battery Against PATRICK MANNING
### State Tort Claim
### (Defendant BEAUREGARD)

124.     Plaintiffs hereby incorporate paragraphs 1-16 and 48-66 and 71 above, as if specifically set forth herein.

125.     On April 28, 2015 Defendant BEAUREGARD did intentionally and unlawfully commit assault and/or battery upon Plaintiff PATRICK MANNING, by grabbing MANNING from an unsecured vehicle and forcing him to the ground against his will.

126.     BEAUREGARD actions were motivated by anger, hatred, spite, ill-will and/or racial prejudice, and not the lawful exercise of his discretionary duties as a law enforcement officer.

127.     To conceal the illegal nature of his actions BEAUREGARD falsified official documents, and fabricated allegations of a criminal nature against PATRICK MANNING. BEAUREGARD did so with impunity, fully aware that the CITY and HARRISON would fail to responsibly and faithfully question or meaningfully scrutinize his reports and account of the circumstances.

128.     As a direct and proximate result of the Defendant BEAUREGARD'S actions PATRICK MANNING suffered physical injury, embarrassment, indignity, humiliation, emotional and reputable injury, and/or loss of enjoyment of life.

   **WHEREFORE**, the Plaintiff PATRICK MANNING requests this Court enter judgment against Defendant BEAUREGARD individually, and award the Plaintiff compensatory and punitive damages, as well as all other further relief this Court deems just and proper.  Plaintiff PATRICK MANNING demands trial by jury for all issues so triable by right.

### Count X
### Excessive Use of Force PATRICK MANNING
### 42 U.S.C. §1983 Claim
### (Defendant BEAUREGARD)

129.     Plaintiffs hereby incorporate paragraphs 1-16, 48-66 and 71 above, as if specifically set forth herein.

130.    At no time during the events giving rise to this action did PATRICK MANNING commit any act, motion or gesture to oppose Defendant BEAUREGARD that might reasonably have been interpreted or perceived as a threat to his safety, health or wellbeing.

131.    The force used by the Defendant BEAUREGARD against PATRICK MANNING was excessive, unjustified and/or unnecessary, and violated a clearly establish constitution right held by MANNING to be free of unreasonable searches and seizures.

132.    In an effort to conceal the illegal and violative nature of his actions, Defendant BEAUREGARD did falsify official reports, and/or did fail to report or concealed the facts and circumstances which occurred prior to the assault. BEAUREGARD fabricated criminal allegations of violence against a law enforcement officer against MANNING; doing so with impunity, fully aware that the CITY and HARRISON would fail to responsibly and faithfully question, or meaningfully scrutinize, his reports and account of the circumstances.

133.    As a direct and proximate result of the Defendant BEAUREGARD use of excessive force Plaintiff PATRICK MANNING suffered physical and emotional injury, reputable damage and/or loss of enjoyment of life.

   **WHEREFORE**, the Plaintiff PATRICK MANNING requests this Court enter judgment against Defendant BEAUREGARD individually, and award the Plaintiff compensatory and punitive damages, as well as attorney fees pursuant to 42 U.S.C §1988, and all other further relief this Court deems just and proper.  Plaintiff demands trial by jury for all issues so triable by right.

### Count XI
### Negligent Infliction of Emotional Distress Against SHAQUOIA MANNING, PZM and PGM
### (Defendant BEAUREGARD)

134.     Plaintiffs hereby incorporate paragraphs 1-16 and 48-66 and 71 above, as if specifically set forth herein.

135.     On or about April 28, 2015 Defendant BEAURGARD physically dragged the driver of an unsecured vehicle out of the driver's seat, setting the vehicle in motion and thereby trapping SHEQUOIA MANNING, PZM and PGM inside, and causing imminent threat to their safety and extreme panic and distress.

136.     At the time he did so BEAUREGARD owed a duty to Ms. MANNING and her children not to endanger their safety. The duty was more than that of a reasonable person, it that was statutory and constitutional.

137.     BEAUREGARD'S willful removal of the person controlling the vehicle, constitutes his own exercise of physical control and impact over the vehicle, recklessly setting the vehicle adrift into the path of moving traffic.

138.     In the alternative, to the extent that there existed no physical impact as a result of the BEAUREGARD'S removal of the driver, BEAUREGARD breached a duty of care owed to SHEQUOIA MANNING, PZM and PGM that was statutory and constitutional, and/or the resulting emotional harm was so foreseeable, that a cause of action for infliction of distress exists without impact.

139.     As a direct and proximate result of BEAUREGARD'S intentional and/or negligent actions SHEQUOIA MANNING, PZM and PGM suffered severe psychological trauma and emotional harm.

     **WHEREFORE**, the Plaintiff SHEQUOIA MANNING, on behalf of PZM, PGM, and herself requests this Court enter judgment against BEAUREGARD individually, and

award the compensatory and punitive damages, as well all other further relief this Court deems just and proper.  Plaintiffs demand trial by jury for all issues so triable by right.

### Count XII
### Violation of 42 U.S.C. §1983
### (Defendant CITY OF PLANTATION and HARRISON
### in his individual capacity)

140.     Plaintiffs hereby incorporate paragraphs 1-74 above, as if specifically set forth herein.

141.     At all times material hereto, Defendants CITY OF PLANTATION and HARRISON were charged with the plenary responsibilities to adopt and implement policies, rules and regulations to reasonably ensure the protection of the constitutional rights of the public.

142.     These policies, rules and regulations necessarily included the implementation of policies and practices to detect, investigate, evaluate, and/or remediate and/or discipline the use of excessive force and/or illegal imprisonment, against citizens, including Plaintiff ASKEW and/or MANNING, by officers of the CITY.

143.     The CITY and HARRISON were deliberately indifferent to these responsibilities, and to the rights of the public by expressly and/or impliedly failing to adopt or implement such policies or practices.

144.     To the contrary, the CITY and HARRISON did condone and encourage the widespread use of excessive force by its police officers, including, but not limited to Defendants BEAUREGARD and/or LATHAM, by maintaining a policy that systematically approved all uses of force without scrutiny or meaningful oversight, or adherence to the CITY'S and HARRISON'S written polices and/or orders.

145.     In short, the written policies and orders of Defendants CITY and HARRISON intended to protect citizens from excessive use of force were systematically ignored by HARRISON and the CITY, and supplanted with a practice deliberately indifferent thereto.

146.     Despite easily discernable and discoverable abuses of the CITY's written policies, and/or orders regarding the use of force, Defendant HARRISON, and/or his subordinate command staff, did approve any use of force without meaningful investigation or due diligence.

147.     Scrutiny and review of Plantation Police Department use of force reports from the years 2010 until the present reveals that the CITY, HARRISON, and the Plantation Police Department have approved and/or ratified the use of force in every instance without exception. However, in multiple situations the level of force used was not justified and was in violation of the CITY'S and HARRISON'S own written policies, procedures and/or orders. On multiple occasions during this time period the official reports and documents necessary for review reflect violations of the written policies on their face.

148.     The failure of Defendants CITY and HARRISON to implement its written policy and/or orders intended to prevent violation of the rights of citizens, and instead maintain a tacit policy of failing to adequately identify instances of false arrest, excessive use of force and/or abuse of power under the color of law by Plantation Police officers was the direct and proximate result of the harm caused to MATTHIAS ASKEW, NA, PATRICK MANNING, SHAQUOIA MANNING, PZM and/or PGM in that these Defendants created a culture and/or environment which caused the officers in their employ to believe they could violate the rights of the citizenry with impunity.

149.     As a result Plaintiffs MATTHIAS ASKEW, NA, PATRICK MANNING,

SHAQUOIA MANNING, PZM and/or PGM suffered injury, including physical, emotional

and/or reputable injuries, and/or loss of enjoyment of life.

WHEREFORE, the Plaintiffs demand compensatory and punitive damages

against Defendants CITY OF PLANTATION and HARRISON, as well as attorney fees

and costs, and all other relief the Court deems just and proper.  Plaintiffs demand trial by

jury for all issues so triable by right.

### Count XIII
### Violation of 42 U.S.C. §1983- failure to train and/or supervise
### (Defendant HARRISON individually)

150.     Plaintiffs incorporate paragraphs 1 – 74 above, as if specifically set forth herein.

151.     At all times material hereto Defendant HARRISON was the municipal official

and final policy maker authorized and responsible for adopting and implementing the rules

and regulations necessary to adequately train and supervise Plantation police officers with

respect to the performance of their discretionary duties.

152.     Defendant HARRISON owed a duty to the public, including the Plaintiffs, to

ensure violations of rights did not occur due to a failure to adequately train and/or supervise

the officers in his employ.

153.     At all times material hereto, Defendant HARRISON knew, or should have known,

the Defendants BEAUREGARD and/or LATHAM were not properly trained and/or

supervised to lawfully and/or competently perform their discretionary duties as law

enforcement officers.

154.     Despite knowing, or having reason to know, that these officers were not properly

trained, and/or required additional and/or closer supervision to avoid inevitable violations

of rights, HARRISON remained deliberately different to the likely foreseeable consequences that such violations would occur.

155.    The deliberate indifference of HARRISON personally was a direct and proximate cause of the injuries sustained by Plaintiffs ASKEW and NA on August 18, 2014, and/or the MANNING family plaintiffs on April 28, 2015.

**WHEREFORE**, the Plaintiffs, each and all, demand compensatory and punitive damages against Defendant HARRISON individually, as well as attorney fees and costs, and all other relief the Court deems just and proper.  Plaintiffs demand trial by jury for all issues so triable by right.

Respectfully submitted this  9th  day of  October, 2015

s/ *David A. Frankel*
David A. Frankel, Esq.

**Law Offices of David A. Frankel, P.A.**
20 South East 20th Street
Fort Lauderdale. Florida 33315
(954) 683-0300
Fla. Bar Number 741779
david@BlueLotusLaw.com